IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 4:14-CR-0101-02 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| CORI LYN MANCUSO, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

March 19, 2015

On this date, the above named defendant, Cori Lyn Mancuso, was sentenced by this Court to a term of twelve (12) months incarceration. This sentence was a variance above the advisory guideline range. The instant memorandum opinion serves to fully explain the rhadamanthine sentence.[1]

**BACKGROUND:**

On December 3, 2013, a Criminal Complaint was filed against indicted co-conspirator, Majed Sayed, charging him with International Parental Kidnapping, in

---

[1] On March 5, 2015, the undersigned provided notice to the parties, pursuant to *Irizarry v. United States*, 553 U.S. 708 (2008), by letter docketed at ECF No. 51, of the Court's prospective intention to sentence Ms. Mancuso to a term of incarceration above that of the advisory guideline range.

1

violation of 18 U.S.C. §1204. Mr. Sayed, a citizen of the Kingdom of Saudi Arabia, is separated from his wife, Jessica Socling, a citizen of the United States; these parties are the parents of three minor children. The Lycoming County Court of Common Pleas had previously issued a custody order, which gave Ms. Socling primary physical custody of the minor children with shared custody and visitation rights for Mr. Sayed. The custody order prohibited travel with the three children outside of the Commonwealth of Pennsylvania and ordered the relinquishment of the children's passports to that court.

In October 2013, Mr. Sayed allegedly began making preparations to remove the children to Saudi Arabia. Mr. Sayed allegedly fraudulently obtained new passports for the children, and, on November 24, 2013, the indictment states that Mr. Sayed illegally flew the three children to Saudi Arabia, where he, and they, remain.

On March 31, 2014, a Criminal Complaint was filed against defendant Cori Lyn Mancuso, charging her with International Parental Kidnapping and making False Statements in violation of 18 U.S.C. § 1001. After Mr. Sayed and Ms. Socling separated, Ms. Mancuso entered into a marriage with Mr. Sayed. This was not a legal marriage, as Mr. Sayed was not yet divorced from Ms. Socling, but a religious marriage, performed pursuant to the religious tenants of the Islamic faith.

On the evening of November 24, 2013, when Mr. Sayed did not return the children to Ms. Socling's residence in Jersey Shore, Pennsylvania, as required by the Lycoming County custody order, a friend of Ms. Socling's contacted Ms. Mancuso to question her about the children's whereabouts.  Ms. Mancuso replied by text message with a lie, actively concealing the underlying crime of International Parental Kidnapping.  She stated that she did not know where either Mr. Sayed or the children were, when in fact she knew that they were en route to the State College, Pennsylvania airport where they would take a flight to Dulles International airport, Washington D.C., to transfer to a flight to Saudi Arabia.  The day after the abduction, Ms. Mancuso sent a text-message to a friend, which stated that the abduction was "easy for everyone, even with my bad acting."

On November 27, 2013, Ms. Mancuso lied to FBI agents when questioned about her knowledge of Mr. Sayed's plan. When questioned by the authorities about Mr. Sayed's whereabouts, and those of the children, Ms. Mancuso also lied to law enforcement and stated that she did not know where they were or about the plan to remove the children to Saudi Arabia. She eventually recanted her false statements and admitted that she did know in advance of Mr. Sayed's plan to abduct the three children.

On December 7, 2013, Ms. Mancuso traveled to Saudi Arabia herself, where

she resided with Mr. Sayed, and the three children. She returned to the United States on April 1, 2014.

On April 10, 2014, the pair were indicted, and the Indictment charged Mr. Sayed and Ms. Mancuso with Conspiracy, in violation of 18 U.S.C. § 371; and International Parental Kidnapping, in violation of 18 U.S.C. § 1204. On September 24, 2014, Ms. Mancuso pled guilty to an Information that charged her with Misprison of Felony in violation of 18 U.S.C. § 4.

**DISCUSSION:**

Misprison of Felony is an offense that originated in English common law. It is codified in Title 18 the United States Code at Section 4. That section states, "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both." The maximum term of imprisonment for Misprison of Felony is three years.

Misprison of Felony requires an active concealment of the crime of the principal. "The mere failure to report a felony is not sufficient to constitute a violation of 18 U.S.C.A. § 4." *United States v. Johnson*, 546 F.2d 1225, 1227 (5th

Cir. 1977) *citing Lancey v. United States,* 356 F.2d 407 (9th Cir.), *cert. denied*, 385 U.S. 922, 87 S.Ct. 234, 17 L.Ed.2d 145 (1966).

When imposing sentence, district courts follow a three-step process. First, the Court calculates the advisory sentencing guideline range. *See U.S. v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Second, the Court rules on departure motions, if any, and states how the ruling affects the guideline calculation. *See id.* (*citing U.S. v. Booker*, 543 U.S. 220 (2005)). Third, the Court exercises discretion by considering the factors set forth in 18 U.S.C. § 3553(a) to determine whether a variance is appropriate. *See id.*

A court may impose a sentence outside of the advisory sentencing guidelines range by means of a departure or variance. The United States Court of Appeals for the Ninth Circuit has described the difference between the two as follows:

> A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a prosecution request to reward cooperation ... or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a).

*U.S. v. Rangel*, 697 F.3d 795, 801 (9th Cir. 2012); *see also* OFFICE OF GENERAL COUNSEL, U.S. SENTENCING COMM'N, DEPARTURE AND VARIANCE PRIMER 1 (June

2013) (citing *Rangel*, 697 F.3d at 801.

The advisory guideline range for Ms. Mancuso was calculated to be 0-6 months imprisonment based on a criminal history category of I and a total offense level of 8. Pursuant to *United States v. Booker and United States v. Fanfan*, the guideline range is advisory only, and District Court may tailor the sentence in light of other statutory concerns as outlined in 18 U.S.C. § 3553(a). 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

Congress has determined that the factors to be considered when imposing sentence are as follows:

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
      (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
      (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

  (5) any pertinent policy statement--
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  The undersigned found that varying upward from the top of the advisory guideline range to a term of imprisonment of twelve (12) months was sufficient,

and not greater than necessary for the following reasons.

First, the nature of the underlying offense and the lengthy amount of planning time is especially malicious. Had the abduction been a hasty decision by Mr. Sayed, Ms. Mancuso may not have had the benefit of reflection. But Ms. Mancuso admitted to federal agents that the abduction had been planned for approximately a month; this period of time demonstrates to the Court that Ms. Mancuso had sufficient time to consider her role in the offense and cultivate a fully culpable mens rea.

Second, the sentence imposed needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for this defendant. Ms. Mancuso admitted to actively concealing a kidnapping. She had approximately thirty days within which to consider or reconsider the seriousness of the underlying crime and in that timeframe she could have notified the authorities and prevented the children's kidnapping by their father. The Kingdom of Saudi Arabia is not a party to the Hague Abduction Convention, nor is it a U.S. Treaty Partner under the Hague Abduction Convention. Her participation in the concealment of her former husband's involvement in international parental kidnapping may result in these three boys never seeing their mother or her family again, at least as children.

Finally, the undersigned desired to avoid unwarranted sentencing disparities. Accordingly, the Court engaged in extensive research of cases in order to craft the appropriate sentence while simultaneously attempting to avoid a sentencing disparity.[2] The sole case that the Court was able to find that was remotely comparable to the case at bar was one from the Ninth Circuit entitled *Untied States v McNally*, 159 F.3d 1215 (9th Cir. 1998). In that case, Defendant McNally plead guilty to Conspiracy to commit an International Parental Kidnapping after she helped her brother kidnap their niece from the child's residence in Nevada. Her co-conspirator brother remained with their niece in Florida for two days before Defendant McNally aided law enforcement in finding the child. Defendant McNally was sentenced to a term of imprisonment of five months.

---

[2]The Court initially contemplated imposing a two-year term of incarceration. However, after conducting research, I found that often the parent who is sentenced for the crime underlying the misprision felony here, international parental kidnapping, is sentenced to a term of incarceration of approximately two to three years. *See, e.g.*, *United States v. Tomaskovic*, 275 Fed. Appx. 884 (11th Cir. 2008); *United States v. Dallah*, 192 Fed. Appx. 725 (10th Cir. 2006); *United States v. Amer*, 110 F.2d 873 (2nd Cir. 1997); *United States v. Matusiewicz,* 402 Fed. Appx. 723 (3d Cir. 2010); *United States v. Ayangade*, 359 Fed. Appx. 668 (7th Cir. 2010); *United States v. Hasan*, 586 F.3d 161 (2nd Cir. 2009); *United States v. Ayesh*, 155 Fed. Appx. 967 (7th Cir. 2009); *United States v. Newman*, 614 F.3d 1232 (11th Cir. 2010); *United States v. Bokel*, 185 Fed. Appx. 234 (4th Cir. 2006) (thirty-three month sentence reversed as inconsistent with *Booker, supra*); *United States v. Shabban*, 612 F.3d 693 (U.S. App. D.C. 2010) (reversed for evidentiary hearing); Accordingly, I concluded that a two-year sentence for Ms. Mancuso would have been greater than necessary.

To sentence Ms. Mancso at the top of the guideline range to six months would place her sentence in line with that of Defendant McNally, which seems inappropriate as the factual scenarios differ. On a superficial level, it appears that their respective roles in the underlying offense was the same; however, they are vastly distinguishable, which aided the Court in crafting sentence of twelve (12) months. First, Ms. Mancuso engaged in malice aforethought by plotting the kidnapping of the minor children for at least thirty days in advance. Second, the minor children were abducted to the Kingdom of Saudi Arabia, a country which refuses to participate in any treaty with the United States that would aid law enforcement here in the return of the minor children to their mother. Third, Ms. McNally was involved in the abduction of one child; Ms. Mancuso's role in the offense resulted in the abduction of three minor children.

The Court also considered mitigating factors in fashioning a sentence. The most significant factors to the Court are Ms. Mancuso's age, her lack of a criminal history, and her role in the offense. She is relatively young; this is her first criminal offense, both juvenile and adult; and her role in the offense was active concealment – she did not admit facts that indicate that she was involved in the actual removal of the children from the Commonwealth of Pennsylvania or the United States. However, these mitigating factors do not overcome the seriousness

of this offense, nor the length of time she, as a talented, college educated young woman, had to develop a fully culpable mental state.

Additionally, counsel for the defendant argued in a sentencing memorandum, ECF No. 50 at 4, that Ms. Mancuso was bound to obey the "orders of her husband under the strict constraints of Islam." This argument lacks legal support. Following the orders of one's spouse is not a defense to a crime. Additionally, the argument lacks credibility. The sentencing memorandum goes on to state that "[s]he has requested and received a divorce from him under the Muslim religion." *Id.* at 6. It is contradictory to argue that she was bound to her husband to not report his crime, yet she could not feel completely loyal to him, as she was able to initiate, and receive, a religious divorce from him, against his wishes.

Ms. Mancuso was a necessary instrument in accomplishing the result of the underlying crime to which she had knowledge and actively concealed – international parental kidnapping. She successfully deflected questions about the children's whereabouts on the night of the abduction. The day that Mr. Sayed left to transport the children by air to Saudi Arabia was a pivotal time for Ms. Mancuso. After Ms. Sayed left their joint residence, she had the ability to alert Ms. Socling, a friend, or law enforcement, and prevent the commission of, what at that

point remained, an inchoate crime. Ms. Mancuso had that ability and chose to remain an active participant in the concealment of the crime after she had more one month's time in which to develop a fully culpable mental state.

It is for all of the foregoing reasons that the Court found that a term of imprisonment for twelve months was sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and avoid unwanted sentencing disparities.


BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge